**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHARLEE BROWN,         )
                              )       Case No.: 1:22-CV-01612 (JDB)
     *Plaintiff*,        )
                              )
    v.                    )       **JURY TRIAL DEMANDED**
                              )
TRINITY WASHINGTON      )
UNIVERSITY,            )
                              )
     *Defendant*.      )
                              )

**SECOND AMENDED COMPLAINT FOR COMPENSATORY**
**<u>AND INJUNCTIVE RELIEF</u>**

Comes now Plaintiff, Charlee Brown (hereinafter "Plaintiff" or "Ms. Brown"), by and through undersigned counsel with her Complaint for Compensatory and Injunctive Relief, against Defendant Trinity Washington University (hereinafter "Defendant" or "Trinity"), and states as follows:

**<u>INTRODUCTION</u>**

Plaintiff was a police officer with the Metropolitan Police Department (hereinafter "MPD"), and is currently employed as a civilian in the Human Resources department of MPD. In August of 2020, Plaintiff was visiting a community party when gun shots were fired at the event. She was struck in the neck by a stray bullet and was severely injured. After multiple surgeries, and more than four (4) months in the hospital recovering from her injuries, she enrolled in classes at Trinity to work on obtaining a Masters' Degree.

1

Although doing course work was a challenge for her due to lingering symptoms from her injuries, Plaintiff was able to complete course work and meet expectations. However, she needed a little extra time to complete assignments for one class because she could not rely on her dominant hand to write, and because looking at a computer screen was triggering headaches. Trinity agreed to give her extra time to complete course work, and Plaintiff submitted her assignments in a timely manner. However, thereafter, Trinity gave Plaintiff an F in the course and refused to grade the materials she submitted.

Even worse, Trinity completely violated its contractual obligations to Plaintiff when another professor discussed Plaintiff's personal life and course work with a co-worker of hers, and exhibited animus against Plaintiff because of a warped and false perception about the legitimacy of Plaintiff's disability and need for accommodation. Despite Plaintiff's repeated efforts to obtain an accommodation of her disability, Trinity has treated her with contempt and disrespect, and has refused to allow her to obtain the benefit of the tuition she paid to the institution.

Both professors who have disrespected and denigrated Plaintiff are Latino males. Plaintiff is an African American woman. She has been subjected to completely different standards and policies than similarly situated non-African American students, and further asserts that she has been discriminated against based on her race and gender.

Herein, Plaintiff asserts claims pursuant to the Rehabilitation Act, the Americans with Disabilities Act, the District of Columbia Human Rights Act, and common law of the District of Columbia. She seeks injunctive relief to allow her to complete her course work and for it to be graded by persons who are not biased against her. She also seeks compensatory and punitive damages against Defendant as outlined herein.

## PARTIES

1.      Plaintiff is an African American woman, who is now a resident of the District of Columbia. She was a sworn officer with the MPD, but has been medically retired because of her injuries.  She now works as a civilian employee at MPD.  She is a registered graduate student at Trinity.

2.      Defendant is a private Catholic University, located in the District of Columbia.  It receives federal funds via federal student aid and other federal programs.

## JURISDICTION AND VENUE

3.      This Court enjoys jurisdiction over this matter because it arises under the laws of the United States, including the Rehabilitation Act, 29 U.S.C. § 794 (b), et seq., and the Americans With Disabilities Act, 42 U.S.C. §12132, et seq.  Venue is proper in this jurisdiction because all acts and omissions that form the basis of the claims herein took place in the District of Columbia. This Court enjoys supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same facts as the federal claims.

## RELEVANT FACTS

4.      Plaintiff is an African American woman who was a police officer with MPD from January of 2017 to 2022.  She was medically retired from MPD and now works as a civilian in the Human Resources Department.

5.      On or about August 9, 2020, Plaintiff and a friend, Jazmine Hester (hereinafter "Ms. Hester") were on their way to go to a DC area lounge.  Ms. Hester asked to stop on the way to visit with a colleague, who was at a community party.

6.      When Plaintiff and Ms. Hester got to the party, Ms. Hester spoke with the colleague.  When Ms. Hester and Plaintiff turned to leave the event, gun fire broke out and Plaintiff was shot in the neck by a stray bullet.  The shot came out of the blue, and was unexpected because there was no conflict going on at the time.

7.      The bullet caused Plaintiff severe cervical spine injuries, and she was taken immediately to the hospital.  Plaintiff underwent spinal surgery and was in the hospital for approximately four (4) months.  She came very close to dying or being permanently paralyzed.

8.      Instead, Plaintiff suffered partial paralysis involving one arm, and other cerebral-spinal injuries that caused her serious headaches, weakness on one side of her body, residual pain, and other related consequences.

9.      Plaintiff has had to undergo several surgeries since the initial injury.  She has since been actively trying to recuperate and rehabilitate the injury, and still attends physical therapy once a week.

10.     Plaintiff still deals with weakness on the right side of her body, she still suffers from headaches, and struggles with formation of words and has slower mental processing.  Her symptoms have improved with therapy, but she still needs accommodation to complete normal tasks.

11.     Prior to her injuries, Plaintiff obtained an undergraduate degree from Trinity University (hereinafter "Trinity"), and maintained a strong grade point average.

12.     In August of 2021, Plaintiff enrolled in graduate courses to obtain a Masters' Degree in Human Resources Administration.

For the Fall semester of 2021, Plaintiff enrolled in three classes:  (1) ADM 603 Admin; (2) HRM 621 --Workplace Development; and (3) HRM 641 Human Resource Development with.

13.     During that first semester of 2021, Plaintiff attempted to complete her classwork without any accommodation, despite the fact that she was getting headaches from the computer screen, had difficulty taking notes because her dominant side was affected by her injury, and she was still dealing with treatment and therapy for her injury.  Plaintiff was able to successfully complete two of her classes.

14.     Plaintiff received in a B+ in both Human Resource Development and Workplace Development.

15.     The Admin class was taught by Professor Javier Lopez (hereinafter "Professor Lopez").

16.     In November of 2021, Professor Lopez assigned the students in his class to a group assignment, placing four students in each group.  However Professor Lopez failed to assign Plaintiff to any group.

17.     On or about November 18, 2022, Plaintiff informed Professor Lopez that she was the only student in the class not to be assigned to a group.

18.     Ten days later, Professor Lopez cavalierly responded:

> Thanks for your message. I was waiting to hear from your other classmates about needing to join a team. Unfortunately, I have not heard from others and would like to offer you the chance to be a team of 1. Please let me know if you have any questions or concerns.

19.     Obviously, whatever benefit the other students would gain by working together, Professor Lopez was not willing to extend to Plaintiff.  Plaintiff therefore had to complete the group assignment on her own.

20.     As her she was nearing the end of the semester, Plaintiff's headaches, eye strain, and arm and shoulder pain, and fatigue substantially increased, making it much harder for her to complete her work on her computer.  As a result of the change in her symptoms, Plaintiff realized she needed an accommodation in the form of extra time to complete her assignments.

21.     With respect to Admin 603, Plaintiff was able to complete nearly all of the assignments, but as she was trying to complete the group assignment on her own, she was taking frequent breaks because the work she was doing involved more writing and computer time. As a result, Plaintiff's symptoms had a more noticeable and dramatic impact on her ability to work.

22.     Plaintiff spoke to her Professor Lopez about her increasing challenges, and he encouraged Plaintiff to seek a reasonable accommodation for her disability.

23.     At the time that Plaintiff asked for a reasonable accommodation, she was doing well in Professor Lopez's class.   She had turned in all assignments in a timely manner, and was not informed in any way that she was at risk of failing the course.   All of her submitted assignment to that point were graded as satisfactory.

24.     At no point in time during Professor Lopez's class was Plaintiff ever warned or admonished that she was at risk of failing the course.

25.     Plaintiff spoke to an advisor, Debbie Camp (hereinafter "Ms. Camp") about an accomodation, who in turn referred Plaintiff to Kimberly McManus (hereinafter "Ms. McManus") at the Disability Services Office (hereinafter "DSO"), to help Plaintiff identify any accommodations and resources she might need to complete her class work.

26.     At the DSO, Plaintiff worked with Ms. McManus, and they agreed that reasonable accommodation would involve Plaintiff turning in her assignments after the December break.

27.     After meeting with the DSO, Plaintiff was informed by Professor Lopez that he needed to submit paperwork to the Dean of Trinity University to approve giving Plaintiff more time to complete her assignments, and that the Dean would need to approve the request.

28.     Importantly, no official of Trinity suggested to Plaintiff that she needed to do anything else to ask for, or obtain the reasonable accommodation she needed, and none suggested or implied to her at the time, that her request was untimely or against Trinity policy.

29.     At the time that Plaintiff asked for the accommodation, Ms. Camp told Plaintiff she would receive an "incomplete" in the class until her assignments were graded.

30.     While the Dean was reviewing the request, Professor Lopez gave Plaintiff an F in the class, rather than giving her an "incomplete," which would not have affected Plaintiff's Grade Point Average (hereinafter "GPA").

31.     As a result of the request for a reasonable accommodation, Plaintiff was given until February to complete the remaining assignments in Professor Lopez' class.

32.     During the winter break, Plaintiff's symptoms became so severe that her treating physician determined she needed another surgery.

33.     On or about January 24, 2022, Plaintiff had surgery on her neck and right arm, and was affected by being on pain-killing drugs and the need to recuperate.  She was thus given until March 31, 2022, to submit her work.

34.     In February of 2022, Plaintiff found out that she did not get an incomplete in Professor Lopez' class, but rather was given an F.   Plaintiff was understandably shocked by this, and went to speak to Reva Jones (hereinafter Ms. Jones"), who was the Director of the business program at Trinity.   Ms. Jones assured Plaintiff that the F on her transcript would be changed once her remaining assignments were turned in and graded.

35.     Plaintiff also spoke to Ms. Camp about receiving an F instead of an incomplete in Professor Lopez's course, and was also assured by Ms. Camp that the grade would be changed once Plaintiff submitted the missing assignments.

36.     Plaintiff submitted her remaining assignments in a timely manner, on or about March 17, 2022.

37.     However, Professor Lopez refused to grade the assignments, and failed to respond to any of Plaintiff's emails to him inquiring about changing her grade after completion of the course.

38.     While Plaintiff was recovering from surgery, Trinity, by way of its indifference and lack of professionalism towards Plaintiff, put the onus on Plaintiff to find Professor Lopez, and get him to execute the reasonable accommodation to which Trinity had previously agreed.

39.     In fact, Trinity admitted in an email to Plaintiff that it had lost contact with Professor Lopez, and were unable to reach him.

40.     To date, Trinity has taken no actions to ensure that Plaintiff's assignments were fairly and carefully graded, and it has not changed Plaintiff's F grade in the course.

41.     As a direct and proximate cause of the unfair and inaccurate F grade on Plaintiff's transcript, Plaintiff's GPA was dramatically affected.

42.     In accordance with correspondence between Plaintiff and Trinity, Plaintiff asserts that neither Professor Lopez, nor any other qualified faculty member, has actually reviewed and graded her course work, and that the F that remains on her transcript for Professor Lopez's class is the result of a failure to implement the reasonable accommodation to which Trinity agreed.

43.     Plaintiff registered for two additional classes at the beginning of the Spring semester in January of 2022.  She was obviously somewhat delayed in beginning her classwork as a result of the January surgery.

44.     Plaintiff had to miss the first classes of the January semester recuperating from her surgery, but she reached out to both professors of her new classes, and informed them of her situation, and that she would be attending classes within two weeks.

45.     Plaintiff asserts that in reaching out to her professors, and asking for the time to recuperate from her injuries, she was asking for a reasonable accommodation of a disability.

46.     Both of Plaintiff's professors were understanding.  One professor indicated that Plaintiff would not be missing any significant work, and thus was more than willing to provide the accommodation.

47.     The other professor, Bryant Concepcion (hereinafter "Professor Concepcion") also indicated that he would accommodate Plaintiff's disability, and provide her the extra time to make up the two assignments she was going to miss.

48.     Plaintiff returned to class a little earlier than expected, and made up one assignment in Professor Concepcion's class.  As to the second assignment, Plaintiff was told in email correspondence with Professor Concepcion that she would be allowed to make it up as well.

49.     However, inexplicably, Professor Concepcion suddenly changed his mind, and refused to allow Plaintiff to make up the second assignment, claiming that he had a "no make-up" policy, and further asserted that a doctor's note did not trump his "no-make-up" policy.  This represented a 180 degree change from what Professor Concepcion had previously communicated to Plaintiff.

50.     Plaintiff asserts that it made no sense for Professor Concepcion to have accepted one make-up assignment, but to refuse to accept the second one, and that his illogical change of heart was the result of animus towards Plaintiff.

51.     Plaintiff went to Trinity administration to seek assistance, and to ask for a reasonable accommodation of her obvious disability, and to address Professor Concepcion's sudden reversal of policy.

52.     On or about February 7, 2022, Plaintiff reached out to her new advisor, Raushanah Taylor (hereinafter "Ms. Taylor"), to speak about Professor Concepcion's rigid refusal to accommodate

her disability, and also about the terse and hostile tone of voice and demeanor that Professor Concepcion had taken towards Plaintiff.

53.    Ms. Taylor did not get back to Plaintiff until March 18, 2022, approximately eight (6) weeks later. It wasn't until on or about April 6, 2022, that Plaintiff was able to meet with Ms. Taylor.

54.    At the meeting, Ms. Taylor indicated that she did not really work with disabled students, and further stated that she was unable to mediate a dispute between a student and a professor. Ms. Taylor suggested that Plaintiff speak with the Dean, and further that Plaintiff withdraw from Professor Concepcion's class.

55.    In late March of 2022, an MPD co-worker of Plaintiff's, Portia Perkins (hereinafter "Ms. Perkins"), informed Plaintiff about a conversation that Ms. Perkins had with a former MPD employee, related to Plaintiff's class with Professor Concepcion.

56.    Ms. Perkins informed Plaintiff that some weeks prior, she had had a conversation with an acquaintance William Deondrel Smith (hereinafter "Mr. Smith"), about Plaintiff, in which the name of Plaintiff's professor came up because Professor Concepcion was best friends with former police officer Smith. Attached at EXHIBIT 1, is a sworn affidavit regarding the content of that conversation.

57.    According to Ms. Perkins, Mr. Smith had discussed Plaintiff with his friend, Professor Concepcion, and told Professor Concepcion that Plaintiff was faking her injury, and was malingering. This conversation coincided with Professor Concepcion's marked shift in attitude towards Plaintiff, and reversal of his decision to allow her to make up both assignments she missed.

58.    The conversation reported by Ms. Perkins clearly revealed that Professor Concepcion was speaking to Mr. Smith about Plaintiff, about her medical condition, and about her educational and

classroom status, because Mr. Smith knew things he would not have known from any source but Professor Concepcion.

59.     Plaintiff asserts that Professor Concepcion developed animus against Plaintiff as a result of his discussions with Mr. Smith, and that Professor Concepcion believed Plaintiff was not truly disabled and in need of an accommodation.

60.     Plaintiff asserts that it was unethical, and a violation of Trinity rules, guidelines, standards and norms for Professor Concepcion to talk about Plaintiff behind her back to a third party, who had no need to know anything about her, her academic pursuits, or her personal injuries.

61.     Plaintiff went to the Trinity's Dean of Students Karen Revere (hereinafter "Dean Revere") and also went to Rehva Jones (hereinafter "Dean Jones"), who was the Chair of the Department, to speak about the hostility of Professor Concepcion and about Trinity's failure to accommodate Plaintiff's disability.

62.     Plaintiff submitted evidence to Dean Revere, Dean Jones, and her advisor that established that Professor Concepcion had, after the fact, *changed his syllabus* in order to assert that Plaintiff could not reasonably pass his course because of the missed second assignment, which he refused to accept.

63.     This was done with the specific purpose of frustrating Plaintiff's ability to take and complete the course, and was retaliatory in nature.

64.     The evidence Plaintiff provided to Trinity administration established that Professor Concepcion was being dishonest about the course requirements, and that he was targeting Plaintiff in order to stymie her ability to take his course.

65.     On or about April 6, 2022, during a zoom meeting between Plaintiff, her mother, Tracy Kachur (hereinafter "Ms. Kuchar") and Director Jones, Ms. Kuchar apologizing to Plaintiff, and

admitting that Professor Concepcion had violated Trinity University policy by changing his syllabus and assignment policy in the middle of the semester.

66.     In the meantime, Plaintiff's F grade in Professor Lopez's class has remained unchanged because Professor Lopez has refused to fully and fairly grade the material Plaintiff submitted, and Trinity has failed to assign another professor to allow Plaintiff's classwork to be graded.

67.     On or about May 5, 2022, Director Jones provided Plaintiff with a written "Incomplete Contract" agreement outlining what Defendant and Plaintiff agreed to in terms of having her class work graded and her grades changed to reflect her actual academic achievement.

68.     Importantly, the "Incomplete Contract" made perfectly clear that as of May 2022, Professor Lopez had not reviewed or graded Plaintiff's submitted assignments.

69.     In June of 2022, Plaintiff was informed that she was going to lose her federal funding to continue her education because of the effect of the effect of the F in Professor Lopez's class on her GPA.  Specifically, the letter stated:

> **We have reviewed your academic record as of the end of the Spring 2022 semester.  We are writing to inform you that you are not eligible to receive federal or Trinity financial aid for the upcoming 2022-2023 academic year until you regain satisfactory academic progress.** We understand that many students would have experienced extenuating circumstances during the 2021-2022 academic year, so please see the instructions for submitting an appeal at the end of this message.

70.     Not surprisingly, Plaintiff became extremely disturbed and upset when she received this letter, and sought additional counseling to manager her anxiety and depression, and sense of helplessness.

71.     Plaintiff maintains that the F that remains on her academic record is fraudulent, defamatory, punitive and retaliatory in nature.

72.     As a result of Plaintiff's hiring of undersigned counsel, and the filing of the instant action, Trinity agreed to allow Plaintiff to remain in Professor Concepcion's class, and to have a different

professor grade Plaintiff's course work.  Plaintiff asserts that such is functionally an admission that Professor Concepcion was biased against Plaintiff, and that his conduct was improper.

73.     During the remainder of Professor Concepcion's class, which was conducted online, Professor Concepcion was rude, hostile, curt and dismissive of Plaintiff, and spoke to her in a demeaning way that was noticed by her classmates.  Plaintiff asserts that this too, constituted retaliation.

74.     Plaintiff received a C from the professor who graded her work, and asserts herein that the C grade was also unfair and biased against her, and that she should have received a higher grade. Plaintiff asserts that Trinity is retaliating against her for filing the instant action.

75.     As of the filing

76.     Because Plaintiff has lost her federal funding, she has now incurred substantial student indebtedness and will have to borrow in order to complete and obtain her degree.

77.     Plaintiff has been under the constant care and monitoring of physicians and health care professionals since she enrolled at Trinity.  She has also been seeing a mental health professional during all times relevant to the Second Amended Complaint.

78.     Plaintiff asserts that the stress, anxiety, fear, and severe emotional toll that her dispute with Trinity has caused her, has severely impacted her recovery, and has had a marked impact on her that is noted in medical records, and stands in sharp contrast to her mental condition prior to Trinity's improper treatment of her.

79.     Plaintiff suffers from sleeplessness, boots of depression and severe anxiety, as a result of her anger, frustration, sense of helplessness and sadness related to her challenges with Trinity.

80.     Plaintiff has also recently developed a brain aneurism that is being monitored by her health care professionals.  The aneurism is a new infirmity, and Plaintiff asserts that the stress and anxiety

that she is enduring because of Trinity's mistreatment of her is a contributing and complicating factor.

## CLAIMS

### COUNT I

*(Violation of the Rehabilitation Act, 29 U.S.C. § 794 (b)(2) & Title III of The Americans With Disabilities Act, 42 U.S.C. 12181 et seq. -- Failure to Accommodate a Disability)*

81.     Plaintiff incorporates all of the allegations and assertions in the previous paragraphs as if fully restated herein.

82.     Plaintiff is a qualified person with a disability that is well documented.  She made Trinity aware of her disability and her need for reasonable accommodation.

83.     Defendant is a covered entity, subject to the provisions of the Rehabilitation Act because it receives federal funds via federal student aid and other programs.

84.     Trinity is a place of public accommodation and is covered under Title III of the Americans with Disabilities Act.

85.     Trinity had a statutory obligation to engage in an interactive process, and to take reasonable measures to accommodate Plaintiff's disability.

86.     Trinity failed to accommodate Plaintiff's disability in violation of the Rehabilitation Act by refusing to grade assignments that Plaintiff submitted in accordance with an agreed upon accommodation.

87.     Defendant further failed to accommodate Plaintiff's disability by refusing to allow her to submit an assignment after it indicated that she would be allowed to do so, after she needed additional time due to necessary surgery.

88.     As a direct and proximate cause of Defendant's failure to accommodate Plaintiff's disability, she has suffered severe mental and emotional stress and anxiety, and exacerbation of her already debilitating physical pain and symptoms.

89.     Plaintiff seeks injunctive relief in the form of an ORDER, appointing a non-biased qualified professor to review all of Plaintiff's work in Professor Lopez's course, and give her the appropriate grade.

90.     Plaintiff seeks injunctive relief in the form of an ORDER, appointing a non-biased qualified professor to review all of Plaintiff's work in Professor Concepcion's course, and give her the appropriate grade.

91.     Plaintiff also seeks money damages in an amount of not less than $500,000.00, as well as interest and attorney's fees.

## COUNT II

*(Violation of the Rehabilitation Act, 29 U.S.C. § 794 (b) &*
*Title III of The Americans With Disabilities Act, 42 U.S.C. 12181 et seq.-- Retaliation)*

92.     Plaintiff incorporates all of the allegations and assertions in the previous paragraphs as if fully restated herein.

93.     Plaintiff is a qualified person with a disability that is well documented.  She made Trinity aware of her disability and her need for reasonable accommodation.

94.     Defendant is a covered entity, subject to the provisions of the Rehabilitation Act because it receives federal funds via federal student aid and other programs.

95.     Trinity is a place of public accommodation and is covered under Title III of the Americans with Disabilities Act.

96.     Trinity retaliated against Plaintiff for exercising her rights under the Rehabilitation Act and ADA by leaving an F on her transcript, rather than grading the work she submitted and giving her a fair and accurate grade for it.

97.     Defendant, via Professor Concepcion retaliated against Plaintiff for needing and seeking a reasonable accommodation by changing the course syllabus to deny her the ability to complete the course, and by refusing her the ability to submit a course assignment that she was told she could complete before her surgery.

98.     Defendant retaliated against Plaintiff by giving her a lower grade in Professor Concepcion's class than she merited because she exercised her rights under the ADA and the Rehabilitation Act.

99.     Defendant retaliated against Plaintiff by creating a hostile environment for her in Professor Concepcion's class, and allowing him to treat her disparately than other students.

100.    Defendant's actions were both material and adverse, as they denied Plaintiff the benefit of course credit she paid tuition to be able to take, severely harmed her grade point average, and will have long terms effects on her ability to obtain her Masters' Degree or obtain future employment.

101.    Defendant's actions were both material and adverse in that they have caused Plaintiff to lose her federal funding, and have put her ability to continue her studies at risk.

102.    Defendant's adverse and retaliatory actions were directly related to Plaintiff's request for a reasonable accommodation, and Defendant's unilateral, ill-founded, and incorrect belief that Plaintiff wasn't worthy of such an accommodation because she exaggerated her injuries.

103.    As a direct and proximate cause of Defendant's retaliatory actions, Plaintiff has suffered severe mental and emotional pain, and exacerbated the physical symptoms she endured after her surgery.

104.    Plaintiff now seeks compensatory and punitive damages of not less than $750,000.00.

## COUNT III

*(Violation of the District of Columbia Human Rights Act,*
*D.C. Code §§ 1-2520, et. seq.-- Failure to Accommodate a Disability)*

105.    Plaintiff incorporates all of the allegations and assertions in the previous paragraphs as if fully restated herein.

106.    Plaintiff is a person with a well-documented disability.

107.    Plaintiff informed Defendant Trinity of her need for a reasonable accommodation of additional time to complete a few assignments.

108.    Despite engaging in an interactive process to assess her accommodation needs, Defendant failed to carry through with the accommodation by failing to grade Plaintiff's assignments, instead leaving an F on Plaintiff's transcript.

109.    Defendant's failure to assign a professor to fairly and accurately grade the assignments she submitted, violated her rights, and constituted discrimination against her based on her disability.

110.    Defendant's refusal to accommodate Plaintiff's need for extra time due to recent surgery, and its unilateral and post-facto change to course requirements in order to deny Plaintiff the ability to complete a course she enrolled in also violates the DCHRA.

111.    After Plaintiff filed suit to enforce her rights under the DCHRA, Defendant changed course and allowed Plaintiff to complete Professor Concepcion's class, and assigned another professor to grade the course work, but Defendant nevertheless failed to have the coursework graded fairly and accurately.

112.    Defendant's refusal to engage in an interactive process, to accommodate Plaintiff's disability, and its disparate treatment of Plaintiff because of her disability violate applicable law.

113.    As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff, who already suffers from physical ailments, was made to endure severe mental and emotional injuries and additional stress, as well as injuries to her reputation.

114.    Plaintiff seeks injunctive relief in the form of an ORDER, appointing a non-biased qualified professor to review all of Plaintiff's work in Professor Lopez's course, and give her the appropriate grade.

115.    Plaintiff seeks injunctive relief in the form of an ORDER, appointing a non-biased qualified professor to review all of Plaintiff's work in Professor Concepcion's course, and give her the appropriate grade.

116.    Plaintiff also seeks compensatory damages in an amount of not less than $750,000.00, as well as interest, and attorney's fees.

## COUNT IV

### *(Violation of the District of Columbia Human Rights Act,*
*D.C. Code §§ 1-2520, et. seq.-- Retaliation)*

117.    Plaintiff incorporates all of the allegations and assertions in the previous paragraphs as if fully restated herein.

118.    Plaintiff is a qualified person with a disability that is well documented.  She made Trinity aware of her disability and her need for reasonable accommodation.

119.    Defendant is a covered entity, subject to the provisions of the Rehabilitation Act because it receives federal funds via federal student aid and other programs, and to the Title III of the ADA because it is a place of public accommodation.

120.     Defendant retaliated against Plaintiff for pursuing her rights by refusing to fairly and accurately grade the assignments Plaintiff submitted for Professor Concepcion's class and allowing an F to remain on her transcript, which was inaccurate, unfair, fraudulent and defamatory.

121.     Defendant retaliated against Plaintiff for needing and seeking a reasonable accommodation by changing the course syllabus to deny her the ability to complete the course, by refusing her the ability to submit a course assignment that she was told she could complete before her surgery.

122.     Defendant retaliated against Plaintiff by giving her an unfair and inaccurate grade in Professor Concepcion's class, after it was pushed to reverse course by the instant litigation, and allow Plaintiff to continue in the class.

123.     Defendant retaliated against Plaintiff by creating a hostile environment for her in Professor Concepcion's class, and allowing him to treat her disparately than other students.

124.     Defendant's actions were both material and adverse, as they denied Plaintiff the benefit of course credit she paid tuition to be able to take, harms her grade point average, and will have long terms effects on her ability to obtain her Masters' Degree.

125.     Defendant's adverse and retaliatory actions were directly related to Plaintiff's request for a reasonable accommodation, and Defendant's unilateral and ill-founded belief that Plaintiff wasn't worthy of such an accommodation.

126.     As a direct and proximate cause of Defendant's retaliatory actions, Plaintiff has suffered severe mental and emotional pain, and exacerbated the physical symptoms she endured after her surgery. Plaintiff now seeks compensatory and punitive damages of not less than $500,000.00.

## COUNT V

*(Violation of the District of Columbia Human Rights Act,*
*D.C. Code §§ 2-1401.01, et. seq.-- Race Discrimination)*

127.    Plaintiff incorporates all of the allegations and assertions in the previous paragraphs as if fully restated herein.

128.    Plaintiff is an African American woman.

129.    Trinity denied Plaintiff the benefits of the tuition she paid to obtain a graduate education because or her race, African American.

130.    Plaintiff asserts that non-African American students who are similarly situated were accommodated, and treated more fairly than Plaintiff has been.

131.    Plaintiff asserts that Professors Lopez and Concepcion harbored animus against Plaintiff because she is an African American woman, as demonstrated by their open hostility to her, and the disparate manner in which she was treated with respect to class assignments, project assignments and grading.

132.    Plaintiff asserts that Professors Lopez and Concepcion created a hostile classroom environment for her by the way they treated her.

133.    Plaintiff asserts that but-for the fact that she is an African American woman, she would have been treated far better and more respectfully by Defendant.

134.    Plaintiff asserts that but-for the fact that she is an African American woman, her request for a reasonable accommodation would have been honored.

135.    Plaintiff asserts that Trinity's actions constitute material adverse actions, and that as a direct and proximate cause of those adverse actions, Plaintiff has suffered mental and emotional anguish, as well as material obstruction to her ability to obtain a graduate education.

136.    Plaintiff herein seeks compensatory damages against Defendant in amount not less than $500,000.00.

## COUNT VI

*(Violation of the District of Columbia Human Rights Act,
D.C. Code §§ 2-1401.01, et. seq.-- Gender Discrimination)*

137.    Plaintiff incorporates all of the allegations and assertions in the previous paragraphs as if fully restated herein.

138.    Plaintiff is a member of protected class because she is a woman.

139.    Trinity denied Plaintiff the benefits of the tuition she paid to obtain a graduate education because of her gender.

140.    Plaintiff asserts that but-for the fact that she is an African American woman, she would have been treated far better and more respectfully by Defendant.

141.    Plaintiff asserts that Professors Lopez and Concepcion harbored animus against Plaintiff because she is an African American woman, as demonstrated by their open hostility to her, and the disparate manner in which she was treated with respect to class assignments, project assignments and grading.

142.    Plaintiff asserts that Professors Lopez and Concepcion created a hostile classroom environment for her by the way they treated her.

143.    Plaintiff asserts that but-for the fact that she is an African American woman, her request for a reasonable accommodation would have been honored.

144.    Plaintiff asserts that male students who are similarly situated were accommodated, and treated more fairly than Plaintiff has been.

145.    Plaintiff asserts that Professors Lopez and Concepcion harbored animus against Plaintiff because of her gender.

146.    Plaintiff asserts that Trinity's actions constitute material adverse actions, and that as a direct and proximate cause of those adverse actions, Plaintiff has suffered mental and emotional anguish, as well as material obstruction to her ability to obtain a graduate education.

147.    Plaintiff herein seeks compensatory damages against Defendant in amount not less than $500,000.00.

**COUNT VII**

*(Breach of Contract)*

148.    Plaintiff incorporates all of the allegations and assertions in the previous paragraphs as if fully restated herein.

149.    Plaintiff asserts that she had a binding contract with Trinity for the provision of accredited education services, that was supported by substantial consideration in the form of fees.

150.    The terms of the contract specify that Defendant will supply and provide qualified professors to present course material and to *timely* grade assignments submitted by students in a professional, fair and unbiased manner.

151.    Separate and apart from the contract for education services, Plaintiff entered into several contractual agreements with Trinity about how and when it was going to grade her work.  These agreements were detailed and in writing, and supported by valuable consideration.

152.    Trinity violated each of these written "contracts" to remedy the status of Plaintiff's incomplete course work.

153.    Trinity has refused to grade Plaintiff's course material at all, let alone in timely, fair and unbiased manner. Instead, Trinity has allowed an F to remain on Plaintiff's transcript that does not reflect her work, and is retaliatory in nature.

154.     Plaintiff was forced to submit her course work when she did because of her disability, and the permission she obtained to submit the material when she did, was part of the reasonable accommodation of that disability.

155.     Commensurate with that accommodation, was the understanding and agreement that Defendant would grade Plaintiff's work, in a timely, fair and accurate manner, which it failed to do.

156.     Defendant's refusal to do so violates the terms of the contract between the parties.

157.     Moreover, Defendant had a contractual obligation to keep Plaintiffs academic and health information confidential, which it breached when Professor Concepcion spoke about Plaintiff to a disinterested third party.

158.     As a direct and proximate cause of Defendant's breach, Plaintiff is hampered in her ability to complete the course work towards her Masters' Degree, and has lost her federal funding due to an inaccurate and fraudulent F on her transcript, which is negatively affecting her GPA.  Plaintiff now has a substantial academic debt to pay in order to obtain her degree.

159.     Plaintiff seeks an ORDER from the Court, mandating specific performance of the contract, and requiring that Trinity procure a qualified professor to grade Plaintiff's work and allow her to obtain credit for the work she completed.


**COUNT VIII**

*(Breach of the Covenant of Good Faith and Fair Dealing)*

160.     Plaintiff incorporates all of the allegations and assertions in the previous paragraphs as if fully restated herein.

161.    Plaintiff asserts that she had a binding contract with Trinity for the provision of accredited education services, that was supported by substantial consideration in the form of fees.

162.    Plaintiff's contract with Defendant was subject to the covenant of good faith and fair dealing, as all contracts are.

163.    Defendant violated the covenant of good faith and fair dealing by refusing to grade Plaintiff's course work in a timely, fair and unbiased manner.

164.    Defendant violated the covenant of good faith and fair dealing by forcing Plaintiff to chase down her professors, and shifting the responsibility of executing Plaintiff's reasonable accommodation on her, rather than doing so without being forced to through litigation (to the extent that it actually accommodated Plaintiff at all).

165.    As part of the contract entered into between Plaintiff and Defendant, Plaintiff expected, and had a right to expect, that her professors would keep her course work and grades confidential, and not discuss her health, injuries, and educational status with third parties.

166.    Separate and apart from the contract for education services, Plaintiff entered into several contractual agreements with Trinity about how and when it was going to grade her work.  These agreements were detailed and in writing, and supported by valuable consideration.

167.    Trinity violated each of these written "contracts" to remedy the status of Plaintiff's incomplete course work.

168.    Professor Concepcion violated educational ethics standards, and the covenant of good faith and fair dealing by discussing Plaintiff with his personal friend, former police officer, Mr. Smith.

169.    Professor Concepcion violated the covenant of good faith and fair dealing by allowing himself to be influenced by representations from Mr. Smith to alter his treatment of Plaintiff in the classroom.

170.    As a direct and proximate cause of Professor Concepcion's actions, Plaintiff has lost the benefit of her bargain in paying tuition to Trinity.

171.    As a direct and proximate cause of Trinity's breach of the covenant of good faith and fair dealing, Plaintiff has incurred substantial educational debt in order to complete her studies.

172.    As a direct and proximate cause of Professor Concepcion's actions, Plaintiff suffered damage to her reputation, and severe mental and emotional anguish.

173.    As a direct and proximate cause of Defendant's violations of the covenant of good faith and fair dealing, Plaintiff suffered severe physical and emotional symptoms that contributed to and complicated her injuries and challenged her recovery.

174.    Plaintiff therefore seeks compensatory and punitive damages in an amount of not less than $1,000,000.00.

## COUNT IX

### *(Negligence)*

175.    Plaintiff incorporates all of the allegations and assertions in the previous paragraphs as if fully restated herein.

176.    Plaintiff asserts that as a disabled student at Trinity, Defendant owed her a duty of care with respect to ensuring that she was able to attend classes, and obtain the worth of the fees she paid, and that she be treated with respect and courtesy by her professors.

177.    Trinity could foresee and predict that disabled students would need special care and attention to ensure that they can attend and obtain the benefits of their educational courses.

178.    Other similarly situated universities to Defendant, would not have taken the same actions that Defendant Trinity has taken.

179.   Other similarly situated universities to Defendant, would not have allowed a professor to violate a student's privacy as Professor Concepcion has.

180.   The appropriate standard of care that is owed to students can be established through expert or lay witness testimony on how other universities treat disabled students.

181.   Plaintiff asserts that Defendant had a duty to ensure that the faculty and staff of Trinity honor and protect the privacy rights of Trinity students.   By allowing Professor Concepcion to violate Plaintiff's rights to privacy and ethical behavior, Defendant breached its duty to Plaintiff.

182.   Plaintiff asserts that Defendant had a responsibility to ensure that its staff adhere to all local, state and federal laws, and to ensure that its staff execute their duties free of discrimination, bias, or retaliatory animus.   By allowing Professors Lopez and Concepcion to discriminate, retaliate and demean Plaintiff, Defendant violated its duty.

183.   As a direct and proximate cause of Defendant's breach of its duty of care to Plaintiff, Plaintiff lost her federal funding to continue her education.

184.   As a direct and proximate cause of Defendant's failure to train and supervisor its faculty about appropriate conduct, Plaintiff's reputation was badly damaged, her reasonable accommodation request was denied, and she was made to needlessly suffer emotional and mental anguish, as well as exacerbation of physical pain related to her recovery from surgery.

185.   Plaintiff herein seeks compensatory and punitive damages against Defendant in amount not less than $1,000,000.00.

## COUNT X

### (*Negligent Supervision*)

186.    Plaintiff asserts that she had a binding contract with Trinity for the provision of accredited education services, that was supported by substantial consideration in the form of fees.

187.    Plaintiff asserts that Defendant had a responsibility to ensure that the faculty and staff of Trinity honor and protect the privacy rights of Trinity students.

188.    Plaintiff asserts that Defendant had a responsibility to ensure that its staff adhere to all local, state and federal laws, and to ensure that its staff execute their duties free of discrimination, bias, or retaliatory animus.

189.    Defendant failed to train or properly supervise Professor Concepcion about the impropriety of discussing the classroom status and performance of Trinity students with his personal friends.

190.    As a direct and proximate cause of Defendant's failure to train and supervisor its faculty about appropriate conduct, Plaintiff's reputation was badly damaged, her reasonable accommodation request was denied, and she was made to needlessly suffer emotional and mental anguish, as well as exacerbation of physical pain related to her recovery from surgery.

191.    Plaintiff herein seeks compensatory and punitive damages against Defendant in amount not less than $500,000.00.

## JURY DEMAND

192.    Plaintiff demands a jury trial on claims so triable.

Respectfully submitted,

/s/ *Pamela M. Keith*
Pamela M. Keith
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
Tel: (202) 800-0292
Fax: (202) 807-5725
pamkeith@centerforemploymentjustice.com
*Counsel for Plaintiff*